**No. 24-1432**

IN THE

# United States Court of Appeals

FOR THE FOURTH CIRCUIT

SALLY TARQUINIO,
*Plaintiff-Appellant,*

v.

JOHNS HOPKINS UNIVERSITY APPLIED PHYSICS LAB,
*Defendant-Appellee.*

_____

*On Appeal from the United States District Court
for the District of Maryland*

## RESPONSE BRIEF OF DEFENDANT-APPELLEE

September 27, 2024

JEREMY S. SCHNEIDER
JASON A. ROSS
JACKSON LEWIS P.C.
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
(703) 483-8300
Jeremy.Schneider@jacksonlewis.com
Jason.Ross@jacksonlewis.com
*Counsel for Johns Hopkins University
Applied Physics Lab*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __24-1432__      Caption: __Sally Tarquinio v. Johns Hopkins University Applied Physics Lab__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Johns Hopkins University Applied Physics Lab__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☑ YES ☐ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

       Appellee is wholly owned by Johns Hopkins University.



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Jeremy S. Schneider          Date:   September 27, 2024

Counsel for:   Johns Hopkins University Applied Physics Lab

ii

[Print to PDF for Filing]

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT**......................................................i

TABLE OF AUTHORITIES..............................................................................vi

PRELIMINARY STATEMENT..........................................................................1

STATEMENT OF JURISDICTION ...................................................................3

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............................3

STATEMENT OF THE CASE...........................................................................4

    A.    The Parties..........................................................................................4

            1.    Plaintiff-Appellant. ..............................................................4

            2.    Defendant-Appellee. .............................................................4

    B.    Relevant Factual Background ..............................................................5

            1.    APL Institutes a Vaccination and Return to Work Policy. ..........5

            2.    APL's Accommodations Team Followed its Normal Procedure for Evaluating Medical Requests for Accommodations from the Vaccination Policy..........................6

            3.    Tarquinio Requests a Blanket Exemption from Vaccination Policy, APL Requests More Information. ...............6

            4.    Tarquinio Refuses to Sign the Medical Release Form...............7

            5.    Tarquinio Continues to Refuse to Comply with the Vaccination Policy, Provide Additional Medical Information, or Sign the Medical Release Form. ......................8

            6.    APL Denies Tarquinio's Accommodation Request Because Tarquinio Refused to Provide Necessary Medical Information or Allow APL to Speak to her Providers. ..............9

iii

7.    Tarquinio's Refusal to Sign the Medical Release Form Broke Down the Interactive Process..........................................11

C.    Procedural History...................................................................11

SUMMARY OF ARGUMENT...................................................................12

STANDARD OF REVIEW .......................................................................14

ARGUMENT .............................................................................................15

I.    The District Court Correctly Held that Tarquinio Failed to Contest Any of APL's Undisputed Material Facts...............................................15

II.    The District Court Correctly Dismissed Count I Alleging Failure to Accommodate and Correctly Found that Tarquino Broke Down the Interactive Process. ........................................................................17

A.    The District Court Correctly Held Tarquinio Broke Down the Interactive Process, a Total Bar to Recovery.......................................19

1.    The District Court Correctly Held that APL's Request for More Medical Information Was Permissible Under the ADA and a Necessary Part of the Interactive Process..............20

2.    The District Court Correctly Held That Tarquinio Broke Down the Interactive Process By Refusing to Sign the Medical Release Form. ...........................................................21

3.    APL Did Not Break Down the Interactive Process. ................25

B.    The District Court Did Not Err in Making "Key Factual Findings."........................................................................30

C.    Tarquinio Cannot Argue on Appeal that the Medical Release Form Was Overbroad Because she did not Raise this Argument at the District Court, but the Argument Fails Even if the Court Chooses to Consider It. ......................................................32

1.    Tarquinio Cannot Argue that the Medical Release Form is Overbroad Because she did not Raise that Argument at the District Court..............................................32

2.    Even if the Court Considers Her Argument, the Record Establishes that Overbreadth is Not Why Tarquinio Refused to Sign the Release........................................34

D.    The District Court Did Not "Fault[] Tarquinio for Not Accepting an Ineffective Accommodation."............................................36

III.    The District Court Correctly Dismissed Count II Alleging Disability Discrimination. ................................................................38

IV.    The District Court Correctly Dismissed Count III Alleging Prohibited Medical Inquiry Under the ADA. .................................................42

A.    The District Court Correctly Determined that APL's Requests were Job Related. .................................................43

B.    The District Court Correctly Held that APL's Request for Medical Information Arose from the Accommodation Request. ........45

C.    The District Court Properly Found that the Vaccination Policy Was Implemented to Protect Public Safety Thereby Further Justifying APL's Request for Medical Documentation......................47

CONCLUSION.........................................................................48

STATEMENT REGARDING ORAL ARGUMENT..............................................49

CERTIFICATE OF COMPLIANCE ....................................................50

CERTIFICATE OF SERVICE .........................................................51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Mass. Gen Bringham, Inc.*,
    No. 21-11686-FDS, 2023 U.S. Dist. LEXIS 174606
    (D. Mass. Sept. 28, 2023) ....................................................................23

*Ali v. McCarthy*,
    179 F. Supp. 3d 54 (D.D.C. 2016)......................................................23

*Allen v. City of Raleigh*,
    140 F. Supp. 3d 470 (E.D.N.C. 2015) ................................................21

*Bates v. UPS, Inc.*,
    511 F.3d 974 (9th Cir. 2007) ..............................................................41

*Berkner v. Blank*,
    No. DKC 12-1390, 2013 U.S. Dist. LEXIS 34320 (D. Md. Mar.
    11, 2013) .......................................................................................19, 22

*Bobnar v. AstraZeneca*,
    672 F. Supp. 3d 475 (N.D. Ohio 2023) ..............................................43

*Bouchat v. Baltimore Ravens Football Club*,
    346 F.3d 514 (4th Cir. 2003) ..............................................................14

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................14

*Class v. Towson Univ.*,
    806 F.3d 236 (4th Cir. 2015) ..............................................................28

*Coffey v. Norfolk S. Ry. Co.*,
    23 F.4th 332 (4th Cir. 2022) ..................................................21, 34, 46

*Coffey v. Norfolk S. Ry. Co.*,
    No. 2:19-cv-509, 2021 U.S. Dist. LEXIS 46473 (E.D. Va. Feb. 5,
    2021) ............................................................................................45, 47

*Covel v. Cmty. Physicians of N. Port, P.A.*,
No. 23-10853, 2024 U.S. App. LEXIS 10598 (11th Cir. May 1,
2024) (per curiam) ...........................................................................44, 45

*Cox v. SNAP Inc.*,
859 F.3d 304 (4th Cir. 2017) ...............................................................32

*Crabill v. Charlotte Mecklenburg Bd. of Educ.*,
423 F. App'x 314 (4th Cir. 2011) .........................................................19

*EEOC v. Firestone Fibers & Textiles Co.*,
515 F. 3d 307 (4th Cir. 2008) .........................................................18, 37

*Emmett v. Johnson*,
532 F.3d 291 (4th Cir. 2008) ................................................................15

*Francis v. Booz, Allen & Hamilton, Inc.*,
452 F.3d 299 (4th Cir. 2006) ...............................................................15

*Frye v. Am. Coll. of Radiology*,
No. 1:19-cv-80, 2020 U.S. Dist. LEXIS 269603 ("E.D. Va. March
11, 2022) (*aff'd by Frye v. Am. Coll. of Radiology*, No. 20-1604,
2022 U.S. App. LEXIS 2937) (4th Cir. Feb. 1, 2022).........................46

*Guessous v. Fairview Prop. Invs., LLC*,
828 F.3d 208 (4th Cir. 2016) ...............................................................16

*Haneke v. Mid-Atl. Capital Mgmt.*,
131 F. App'x 399 (4th Cir. 2005) .........................................................18

*Hannah v. UPS*,
72 F.4th 630 (4th Cir. 2023) ................................................................19

*Hannah P. v. Coats*,
916 F.3d 327, 339 (4th Cir. 2019) .......................................................46

*Hodge v. United Airlines*,
821 F. Supp. 2d 180 (D.D.C. 2011).......................................................34

*Holmes v. Gen. Dynamics Mission Sys.*,
835 Fed. App'x. 688 (4th Cir. Dec. 9, 2020).........................................18

*Johnson v. United States*,
734 F.3d 352 (4th Cir. 2013) ............................................................32

*Jorgenson v. Conduent Transp. Solutions, Inc.*,
No. SAG-22-01648, 2023 U.S. Dist. LEXIS 18463 (D. Md. Feb. 2,
2023) (*affirmed by Jorgenson v. Conduent Transp. Sols., Inc.*, No.
23-1198, U.S. App. LEXIS 15542 (4th Cir., June 21, 2023)) ...........39

*Joseph v. Target Stores, Inc.*,
No. 20-1730, 2023 U.S. App. LEXIS 8745 (4th Cir. 2023).........32, 33

*Kelly v. Town of Abingdon*,
90 F.4th 158 (4th Cir. 2024) ..............................................................28

*Lacasse v. Didlake, Inc.*,
712 Fed. Appx. 231 (4th Cir. 2018).....................................................38

*Lashley v. Spartanburg Methodist Coll.*,
66 F.4th 168 (4th Cir. 2023) ........................................................20, 28

*Lee v. Seasons Hospice*,
696 F. Supp. 3d 572 (D. Minn. 2023)..................................................43

*Leonard v. Electro-Mechanical Corp.*,
36 F. Supp. 3d 679 (W.D. Va. 2014)....................................................42

*Maersk Line, Ltd. v. United States*,
513 F.3d 418 (4th Cir. 2008) ..............................................................16

*Metro. Wash. Airports Auth. v. Pan*,
106 F.4th 355 (4th Cir. 2024) .............................................................33

*Murphy v. Cty. of New Hanover*,
2021 U.S. App. LEXIS 30275 (4th Cir. Oct. 8, 2021) .......................29

*National Federation of Independent Business v. Department of Labor, OSHA*,
595 U.S. 109 (2022) ......................................................................44, 45

*Perdue v. Sanofi-Aventis U.S., LLC*,
999 F.3d 954 (4th Cir. 2021) ..............................................................18

*Porter v. U.S. Alumoweld Co.*,
125 F.3d 243 (4th Cir. 1997) ..............................................................43

*RFE Industries, Inc. v. SPM Corp.*,
    105 F.3d 923 (4th Cir. 1997) .........................................................................16, 30

*Rowlett v. Balt. City Police Dep't*,
    No. 21-1205-BPG, 2023 U.S. Dist. LEXIS 53911 (D. Md. Mar. 28,
    2023) ...........................................................................................................................20

*Scott v. Montgomery Cnty. Gov't*,
    164 F. Supp. 2d 502 (D. Md. 2001) ...........................................................................18

*Shipton v. Balt. Gas Electric Co.*,
    109 F.4th 701 (4th Cir. 2024) .....................................................................................33

*Thompson v. Potomac Elec. Power Co.*,
    312 F.3d 645 (4th Cir. 2002) ......................................................................................15

*Walton v. Harker*,
    33 F.4th 165 (4th Cir. 2022) .......................................................................................14

*Wilson v. Dollar Gen. Corp.*,
    717 F.3d 337 (4th Cir. 2013) ................................................................................19, 38

*Works v. Colvin*,
    519 Fed. Appx. 176 (4th Cir. 2013) ...........................................................................23

**Statutes**

28 U.S.C. § 1291 ...............................................................................................................3

42 U.S.C. § 12112, *et seq.*(d)(4)(A)...............................................................................*passim*

29 U.S.C. § 2613(c) ........................................................................................................31

**Other Authorities**

29 C.F.R. § 1630.9(a).......................................................................................................19

45 C.F.R. § 164, *et seq.*...................................................................................................34

Federal Rules of Civil Procedure 56 ...............................................................................12

ix

# PRELIMINARY STATEMENT

The district court properly granted The Johns Hopkins University Applied Physics Lab's ("APL") motion for summary judgment on each of Sally Tarquinio's ("Tarquinio") claims.

This case is straightforward. APL instituted a lawful policy requiring that its employees become vaccinated against COVID-19 or request an appropriate religious or medical accommodation.

Tarquinio did not want to be vaccinated and instead wanted a blanket exemption from the policy. She applied for a medical accommodation, but she vehemently resisted APL's efforts to evaluate her request. She would not provide current, relevant, and sufficient medical information, and she refused to allow APL's medical staff to communicate with her doctors to obtain more information about her request.

Eventually, after months of repeated unsuccessful attempts to get Tarquinio to provide current, relevant, and sufficient medical information to evaluate her request, APL terminated her employment for violating its vaccination policy.

Tarquinio brought a three-count complaint alleging violations of the Americans with Disabilities Act ("ADA"). In Count I, she alleges APL failed to accommodate her disability in violation of the ADA. But as the record indisputably establishes, largely through her own admissions, Tarquinio refused to engage in and

1

affirmatively broke down the interactive process. As the district court correctly held, Tarquinio's refusal to provide current, relevant, and sufficient medical information, and her refusal to permit APL's medical staff to speak with her physicians, broke down the interactive process, thereby entitling APL to summary judgment.

In Count II, Tarquinio alleges APL terminated her employment because of her purported disability in violation of the ADA. The district court correctly held there was no dispute that APL terminated Tarquinio's employment because she failed to comply with APL's vaccination policy, and not because of her purported disability.

In Count III, Tarquinio alleges that APL conducted an impermissible medical inquiry in violation of the ADA. The district court correctly held there was no dispute that APL only sought job-related medical information and did so only in response to Tarquinio's own accommodation request.

Tarquinio now appeals the district court's well-reasoned opinion granting APL summary judgment. In her opening brief ("Brief"), Tarquinio misapplies the applicable standard of review and misrepresents the record. Crucial to this Court's analysis, at summary judgment below, Tarquinio did not even attempt to dispute any of APL's facts, and the district court rightly treated APL's facts as undisputed. Now Tarquinio tries to circumvent her failures by repeatedly making factual statements that are either not in, or directly refuted by, the record.

In the end, the case boils down to a simple, undisputed set of facts. Tarquinio requested a medical accommodation from the vaccination policy, but she actively thwarted APL's ability to evaluate her request. She refused to engage in the interactive process and affirmatively broke it down. Tarquinio's refusal to provide current, relevant, and sufficient medical information, and her refusal to permit APL's medical staff to speak with her physician indisputably prevented APL from adequately considering her accommodation request. And as this Court has repeatedly held, when an employee breaks down the interactive process like Tarquinio did here, an employer cannot be liable for violating the ADA.

Tarquinio's resulting inability to comply with APL's lawful vaccination policy was the sole reason for her termination, not her purported disability. And there were no impermissible medical inquiries because all such inquiries were job-related and only made in response to Tarquinio's own accommodation request.

This Court should therefore uphold the district court's decision awarding APL summary judgment.

## STATEMENT OF JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Did the district court correctly accept APL's undisputed material facts based on APL's citation to admissible record evidence for each fact and Tarquinio's

failure to oppose those facts or identify any single material fact she believed to be in dispute?

2.    Did the district court correctly grant APL summary judgment on Tarquinio's failure to accommodate claim under the ADA because Tarquinio broke down the interactive process?

3.    Did the district court correctly grant APL summary judgment on Tarquinio's disability discrimination claim because APL terminated her employment for failing to comply with the vaccination policy and not because of her purported disability?

4.    Did the district court correctly grant APL summary judgment on Tarquinio's medical inquiry claim because APL's requests were job-related and only happened because of Tarquinio's accommodation request?

## STATEMENT OF THE CASE

### A.    The Parties

#### 1.    Plaintiff-Appellant.

Appellant Tarquinio is APL's former employee who alleges APL unlawfully terminated her employment in violation of the Americans with Disabilities Act.

#### 2.    Defendant-Appellee.

Johns Hopkins University Applied Physics Laboratory is a not-for-profit, university-affiliated research center that solves complex research, engineering, and

analytical problems that present critical challenges to our nation.

## B.    Relevant Factual Background

### 1.    APL Institutes a Vaccination and Return to Work Policy.

On September 14, 2021, APL announced a COVID-19 vaccination requirement as a condition of employment for all APL staff (the "Vaccination Policy"). JA173-174. According to the Vaccination Policy, all APL staff needed to submit proof of at least the first dose of an approved vaccination by October 15, 2021. *Id*. The only exceptions to the vaccination requirement were for approved medical or religious accommodations granted by APL's Accommodations Coordinator. *Id.* Those seeking an accommodation were to submit their accommodation requests by October 1, 2021. *Id.* If an employee did not comply with the Vaccination Policy by receiving the first dose of an approved vaccination or have an approved accommodation, their employment would end on October 15, 2021. *Id.*

Because APL's Accommodations Coordinator needed time to individually evaluate each request and to engage in the interactive process, all staff who submitted timely requests were granted temporary accommodations while their requests were pending. JA176-177. Employees whose accommodation denials were issued after October 15, 2021 were given a period of one week after the issuance of the determination to either submit proof of vaccination, resign, or have their employment terminated. JA114.

2.     **APL's Accommodations Team Followed its Normal Procedure for Evaluating Medical Requests for Accommodations from the Vaccination Policy.**

APL had an existing process for evaluating and responding to requests for medical accommodations or disability-based requests, which involved an individualized review of each request to understand the accommodation sought, review relevant medical information from the employee's provider, communicate with the provider, and discuss with the employee's supervisor their job duties. JA177. Where necessary, the Accommodations Team consulted Dr. Clarence Lam, APL's Medical Director for Occupational Health, concerning medical issues identified in an individual's accommodation requests. *Id.*

3.     **Tarquinio Requests a Blanket Exemption from Vaccination Policy, APL Requests More Information.**

On October 1, 2021, Tarquinio submitted an "Employee Request for Medical Accommodation" form to APL's Accommodations Coordinator. JA98.[1] Tarquinio identified the basis of her requested accommodation as "Exemption from COVID-19 vaccine requirement and COVID-19 testing." JA99. Tarquinio identified "Chronic Lyme Disease + Lyme Induced immune dysregulation" as her reason for requesting an accommodation and submitted lab results from 2012, more than nine

---

[1] Not only did Tarquinio ask for a blanket exemption from the vaccination requirement, she also initially sought an exemption from any COVID-19 testing requirements. JA64-66. When asked in her deposition why she sought this accommodation, she admitted it had nothing to do with her purported disability, but instead because she "not did not think it was reasonable" and because she believed "testing doesn't do anything." *Id.*

years earlier. JA99-100, 102-110.

On October 11, 2021, APL asked Tarquinio to sign the Medical Release Form, and stated, "it will enable APL's medical officer to consult with your medical provider on any necessary follow-up." JA116. If Tarquinio had signed the Medical Release Form, it would have enabled the Accommodations Office to obtain additional and current medical documentation in support of her request, and it would have allowed Dr. Lam to speak with her medical providers to gather more information about her request for accommodation. JA228, 278.

### 4. Tarquinio Refuses to Sign the Medical Release Form.

Tarquinio testified she refused to sign the Medical Release Form and acknowledged that her refusal to sign the Form prevented APL from speaking to her medical providers. JA75-76, 120. On October 14, 2021, Dr. Lam advised the Accommodations Coordinator he did not have enough information to fully consider Tarquinio's accommodation request for a blanket exemption from the Vaccination Policy. JA224. Relying on United States Center for Disease Control ("CDC") guidelines, Dr. Lam stated, "Lyme disease is not a medical contraindication to receiving the Covid vaccine. I believe there is insufficient justification in this documentation to accept this request. Further explanation as to specifically why her Lyme diagnosis would preclude her from being vaccinated would need to be submitted." JA212, 224.

On October 14, 2021, Tarquinio reiterated her desire for an exemption from the Vaccination Policy, but again declined to sign the Medical Release Form. JA120. On October 18, 2021, APL informed Tarquinio that the nine-year old medical documentation was insufficient to show why the vaccine is contraindicated for her condition and asked Tarquinio to provide updated information by November 15, 2021. JA118. APL extended her temporary accommodation in the meantime. *Id*.

5.  **Tarquinio Continues to Refuse to Comply with the Vaccination Policy, Provide Additional Medical Information, or Sign the Medical Release Form.**

On November 15, 2021, Tarquinio reiterated she would not comply with the Vaccination Policy and would not sign the Medical Release Form. JA122-125. Instead, she attached two medical journal articles from 2003 and 2005, which did not mention COVID-19 because the disease did not yet exist. JA127-163. On November 22, 2021, as part of the interactive process, Tarquinio met with a member of the Accommodations Team who interviewed her to better understand her particular accommodation request. JA89-90. After the interview, the Accommodations Team reiterated its request for Tarquinio to sign the Medical Release Form so that Dr. Lam could communicate with her providers. JA89-90. The Accommodations Team also reiterated its need for current medical information justifying Tarquinio's accommodation request for a blanket exemption to the Vaccination Policy. JA89-90.

On November 29, 2021, Dr. Lam reviewed the two journal articles[2] and stated there was still not sufficient documentation to justify a blanket medical exemption to the Vaccination Policy:

> There is no evidence that Lyme disease should affect an individual's ability to be vaccinated for Covid and it is not a CDC recognized clinical contraindication. The documentation cited by the employee is 9 years old and she is unable to cite or provide more recent documentation from the provider.

JA228. Dr. Lam again reiterated that he would be willing to speak to the outside medical provider if Tarquinio permitted him, "to be able to understand any specifics of her condition that would warrant a recommendation of approval for this exemption." JA213.

### 6. APL Denies Tarquinio's Accommodation Request Because Tarquinio Refused to Provide Necessary Medical Information or Allow APL to Speak to her Providers.

On November 30, 2021, APL denied Tarquinio's accommodation request. JA165-167. The letter stated she failed to provide current medical documentation that fully explained why vaccination is medically contraindicated and refused to sign the Medical Release Form "which would have allowed APL's Medical Officer to follow-up directly with your provider to secure further clarification." JA166. The

---

[2] Tarquinio misrepresents the record regarding these two articles. She asserts "Dr. Schwartz gave Tarquinio the Harvard articles to inform her and APL about the fact that autoimmune dysregulation is a common problem for patients who contract Lyme Disease." Br. 9. However, neither of these articles were published by Harvard, and Dr. Schwartz explicitly testified he "had no idea what her plan was" with the articles and he did not provide them to her so that she could send them to APL or with any knowledge that she would send them to APL. JA127-163, 192.

letter stated Tarquinio had until December 7, 2021 to provide proof of a first dose of vaccination or her employment would be terminated. JA167.

On December 3, 2021, Tarquinio selectively submitted just a single page from a larger, recently-conducted blood test from the office of Dr. Mark Sivieri.[3] JA169. About this test, Dr. Sivieri testified "there's nothing in the laboratory testing that was done by my office that would give her any diagnosis" and that he never advised Tarquinio not to get vaccinated for COVID-19. JA237. Dr. Sivieri testified "a hundred percent, yes" he agreed Tarquinio **did not qualify for an exemption from the Vaccination Policy**. JA239. Dr. Lam agreed with Dr. Sivieri and so APL responded to Tarquinio on December 6, 2021:

> Because the basis of your determination does not turn on whether you have established the underlying diagnosis below but, rather, whether you have established a condition that is contraindicated for receiving the COVID-19 vaccination according to CDC guidelines, the additional information does not change the determination you received last week.

JA169.

On December 7, 2021, APL sent Tarquinio a letter stating: "as a result of this violation of policy, your employment with the Laboratory is terminated as of the date of this letter." JA171. Tarquinio testified she was terminated "because [she wasn't] in compliance with this policy." JA54-55.

---

[3] The remainder of that blood test showed that Tarquinio did not have active Lyme's disease pathogen in her bloodstream. JA243, 58. Her medical provider further noted that "Patient will need to have conclusive lab results which show that she has active infection in order to qualify for exemption to COVID-19 vaccine, and that would only be temporary." JA248.

7.    **Tarquinio's Refusal to Sign the Medical Release Form Broke Down the Interactive Process.**

Dr. Lam desired to speak with Tarquinio's medical providers to better understand her request, but he could not do so because Tarquinio prevented him. JA221-222. Tarquinio's doctors – Dr. Schwartz and Dr. Sivieri – both testified they would have been willing to speak to Dr. Lam but were not able to do so because Tarquinio did not give them permission. JA190, 246. In his role advising the Accommodations Team for exemptions for COVID-19 vaccination, Dr. Lam "pretty routinely" reached out to providers for other APL employees seeking accommodations. JA219. There were multiple APL employees who requested accommodations where Dr. Lam requested to speak with their providers for more information. JA220. For several of these individuals, once the authorization was granted, Dr. Lam spoke to the provider and later recommended they be granted an exemption from the Vaccination Policy. *Id*.

APL granted 52% of the medical exemption requests it received from the Vaccination Policy. JA273.

### C.    Procedural History

Tarquinio filed her complaint on March 16, 2023. JA02. She filed an Amended Complaint on October 10, 2023. JA03. The Amended Complaint alleges three violations of the ADA against APL: (1) Count I: "Violation of the Americans with Disabilities Act and Amendments, Failure to Accommodate, 42 U.S.C. § 12116, et.

11

seq."; (2) Count II: Violation of the Americans with Disabilities Act and Amendments, Employment Discrimination, 42 U.S.C. § 12112, et. seq.; (3) Count III: Violation of the Americans with Disabilities Act and Amendments, Prohibited Examination and Inquiry, 42 U.S.C. § 12112, et. seq." On October 24, 2023, APL filed its Answer to the Amended Complaint. JA03.

On January 11, 2024, APL moved for summary judgment on all three counts in Tarquinio's Amended Complaint. Tarquinio opposed the motion. JA03. On April 11, 2024, the district court issued a Memorandum Opinion granting APL's motion for summary judgment in full and dismissing the case. *Id*. On May 10, 2024, Tarquinio filed a Notice of Appeal the district court's summary judgment order. *Id*.

## SUMMARY OF ARGUMENT

There is no dispute as to any material fact in the record below. At summary judgment, APL filed a statement of undisputed material facts, including full citations to admissible record evidence for each fact. Tarquinio elected not to identify *any* facts she believed were in dispute. Accordingly, the district court properly applied the undisputed material facts to the law and determined that APL was entitled to summary judgment on all three claims. The district court's decision to deem APL's facts as undisputed was proper under Fed. R. Civ. P. 56, was not clear error, and did not constitute weighing evidence or drawing inferences in APL's favor.

The district court properly held APL's efforts to evaluate Tarquinio's request for a blanket medical exemption from the Vaccination Policy were legally permissible. The district court, in accordance with established precedent, correctly identified Tarquinio as the party responsible for breaking down the interactive process because she refused to provide current, relevant, and sufficient medical information or allow APL's medical staff to speak with her doctors. The undisputed record evidence establishes APL made every effort to try to evaluate Tarquinio's request, but that Tarquinio – and only Tarquinio – prevented it from doing so.

In her Brief, Tarquinio repeatedly misstates what is in the record, laments her own failure to refute the factual record below, and impermissibly raises new arguments on appeal that she did not preserve at the district court. None of this changes the undisputed evidence that Tarquinio broke down the interactive process by refusing to provide current, relevant, and sufficient medical information and by refusing to permit APL medical staff to speak with her providers. This is a full bar to recovery for her failure to accommodate claim (Count I).

Next, the district court properly concluded that APL did not discriminate against Tarquinio because of her disability. The undisputed record establishes, and Tarquinio herself admitted, that APL terminated her employment because she did not comply with the Vaccination Policy and not because of her disability. This alone entitles APL to summary judgment on Tarquinio's unlawful termination claim

(Count II).

Finally, the district court correctly held that APL did not engage in an impermissible medical inquiry in violation of the ADA. The undisputed record proves APL only sought necessary medical information that was job related. It further establishes that APL only sought medical information because of Tarquinio's own request for a medical accommodation from the Vaccination Policy. This entitles APL to summary judgment on Tarquinio's impermissible inquiry claim (Count III).

## STANDARD OF REVIEW

The standard of review applicable to an order granting a motion for summary judgment is *de novo*. *Walton v. Harker*, 33 F.4th 165, 171 (4th Cir. 2022). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A movant for summary judgment need only show that there is an absence of evidence or support for the opposing party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). Where the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the court must grant summary judgment "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (citing *Celotex*, 477 U.S. at 323–24).

A plaintiff cannot create a genuine issue of material fact through unsubstantiated assertions, conclusory allegations, or speculation devoid of supporting facts or authority. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002). "Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 308 (4th Cir. 2006). Likewise, a plaintiff cannot demonstrate a triable issue of disputed fact by building one inference upon another. *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008) (citing *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

## ARGUMENT

### I.     The District Court Correctly Held that Tarquinio Failed to Contest Any of APL's Undisputed Material Facts.

In her Brief, Tarquinio repeatedly claims that the district court improperly weighed evidence and drew inferences in APL's favor. This is not true. As the district court correctly noted, "[a] series of 'undisputed material facts' presented by the Defendant (ECF No. 25-1) were not challenged by the Plaintiff in the briefs submitted.… Accordingly, the material facts presented by Defendant and not challenged by Plaintiff will be treated as undisputed." *See also* Fed. R. Civ. P. 56(e) ("[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may… consider

the fact undisputed for purposes of the motion."); *see also Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 215 (4th Cir. 2016).

Tarquinio had an obligation to identify any material facts she believed were in dispute. She did not, and she cannot do so now. Given her failure, the district court evaluated the totality of the undisputed facts and determined that APL was entitled to judgment as a matter of law. This does not mean that the district court weighed evidence or drew inferences against Tarquinio – she must first present facts to be weighed or from which inferences can be drawn. There were none.

Tarquinio fails to identify even one inference that the district court improperly drew in APL's favor, nor does she identify a single fact which the district court improperly weighed against her. And even if she did identify any such alleged improprieties, given the multitude of undisputed facts identified above, the district court did not commit clear error. *See e.g.*, *Maersk Line, Ltd. v. United States*, 513 F.3d 418, 421 (4th Cir. 2008) ("We apply … clear error review for any inferences it drew from the underlying undisputed facts."); *RFE Industries, Inc. v. SPM Corp.*, 105 F.3d 923, 925 (4th Cir. 1997) ("[The] district court's findings [of fact] may be disturbed on appeal only if they are clearly erroneous.").

Here, Tarquinio's real problem is her dissatisfaction with the strong, undisputed record APL created below, which includes repeated admissions in Tarquinio's own deposition, damning testimony from her physicians, and

contemporaneous records she could not possibly dispute. For example, Tarquinio did not dispute – and does not even attempt to do so now – that (1) she "never submitted a signed request for medical records" and admitted that the form "would have allowed APL's medical officer to follow-up directly with [her] provider to secure further clarification", JA89; (2) she never submitted any documentation from her medical provider explicitly saying she was precluded from being vaccinated, JA79; (3) she was terminated "because [she wasn't] in compliance with th[e Vaccination] policy," JA54-55; (4) she did not have any active Lyme disease and was not "actually suffering any ill effects" from her condition, JA60; and (5) she believed APL should have "just accepted" her "own recommendation" about "whether or not [she was] to be accommodated under the policy" and "should have just – without speaking [to] medical provider or learning any more specific information other than what [she] provided [her]self, that they should have just granted the accommodation to [her] based on [her] word." JA90.

The district court did not improperly weigh evidence or draw inferences in APL's favor. This Court should therefore uphold the district court's decision awarding summary judgment.

## II. The District Court Correctly Dismissed Count I Alleging Failure to Accommodate and Correctly Found that Tarquino Broke Down the Interactive Process.

"To show an employer's failure to accommodate, the plaintiff must prove: (1)

that she had a disability within the statutory meaning; (2) that the employer knew of her disability; (3) that a reasonable accommodation would permit her to perform the essential function, of the position; and (4) that the employer refused to make the accommodation."[4] *Perdue v. Sanofi-Aventis U.S., LLC*, 999 F.3d 954, 959 (4th Cir. 2021).

"Implicit in the fourth element is the ADA requirement that the employer and employee engage in an interactive process to identify a reasonable accommodation." *Haneke v. Mid-Atl. Capital Mgmt.*, 131 F. App'x 399, 400 (4th Cir. 2005). The ADA does not require an employer to provide the specific accommodation requested..., or even to provide the best accommodation, so long as the accommodation...is reasonable." *Scott v. Montgomery Cnty. Gov't*, 164 F. Supp. 2d 502, 508-509 (D. Md. 2001); *EEOC v. Firestone Fibers & Textiles Co.*, 515 F. 3d 307, 321-313 (4th Cir. 2008).

The district court correctly granted summary judgment on Count I, finding: (1) Tarquinio unilaterally broke down the interactive process, a total bar to recovery;

---

[4] Tarquinio argues "[i]t is also undisputed that Tarquinio's vaccination status did not prevent her from performing essential functions of a Systems Engineer." The record does not establish this at all. First, whether Tarquinio could perform the essential functions of the job was not briefed, challenged, or at issue in the district court. Second, Tarquinio's citation to JA56 has nothing to do with the proposition for which it is cited – that page of the Appendix discusses the timeline for getting a doctor's appointment and whether Tarquinio informed anyone at APL of her diagnosis in 2012. Third, this Court has held that "any employee who is categorically unable to comply [with a workplace policy] …will not be considered a 'qualified' individual for ADA purposes." *Holmes v. Gen. Dynamics Mission Sys.*, 835 Fed. App'x. 688, 691 (4th Cir. Dec. 9, 2020).

(2) Tarquinio did not allow APL to explore reasonable accommodations other than the one she demanded.

### A. The District Court Correctly Held Tarquinio Broke Down the Interactive Process, a Total Bar to Recovery.

The ADA requires an employer "make reasonable accommodation to the known physical or mental limitations of an otherwise qualified applicant or employee with a disability, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business." 29 C.F.R. § 1630.9(a).

> [T]o determine the appropriate reasonable accommodation[,] it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation. This process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.

*Berkner v. Blank*, No. DKC 12-1390, 2013 U.S. Dist. LEXIS 34320, at *21-22 (D. Md. Mar. 11, 2013) (citing 29 C.F.R. § 1630.2(o)(3)); *see also Hannah v. UPS*, 72 F.4th 630, 638 (4th Cir. 2023).

"Even if an employer's duty to engage in the interactive process is triggered," subsequent liability "may collapse for a number of reasons." *Wilson v. Dollar Gen. Corp*., 717 F.3d 337, 347 (4th Cir. 2013). "Courts should look for signs of failure to participate in good faith" in the interactive process, and "attempt to isolate the cause of the breakdown and then assign responsibility." *Crabill v. Charlotte Mecklenburg*

*Bd. of Educ.*, 423 F. App'x 314, 323 (4th Cir. 2011).

When an employee causes the breakdown, the employer cannot be liable for failure to accommodate. *See Rowlett v. Balt. City Police Dep't*, No. 21-1205-BPG, 2023 U.S. Dist. LEXIS 53911, at *30 (D. Md. Mar. 28, 2023) ("Plaintiff's decision to abandon the interactive process… caused a breakdown in the process and cannot form the basis for liability"); *Lashley v. Spartanburg Methodist Coll.*, 66 F.4th 168, 179 (4th Cir. 2023) ("We cannot fault [employer] for failing to accommodate [employee]. Due to [employee's] communication breakdown, [employer] was left guessing what an accommodation for [employee] might entail.").

> 1. The District Court Correctly Held that APL's Request for More Medical Information Was Permissible Under the <u>ADA and a Necessary Part of the Interactive Process.</u>

After Tarquinio submitted her accommodation request, APL was permitted under the ADA to seek medical information that:

> (1) describes the nature, severity, and duration of the employee's impairment, the activity or activities that the impairment limits, and the extent to which the impairment limits the employee's ability to perform the activity or activities; and, (2) substantiates why the requested reasonable accommodation is needed.

*Rowlett*, 2023 U.S. Dist. LEXIS 53911, at *25-26 (citing EEOC Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA. Question No. 10 (July 27, 2000), available at http://www.eeoc.gov/policy/docs/guidance-inquiries.html). Employer requests for

employees to submit medical records in response to specific inquiries are "clearly a reasonably effective method of investigating" an accommodation request. *See Coffey v. Norfolk S. Ry. Co.*, 23 F.4th 332, 341 (4th Cir. 2022). "The ADA interactive process contemplates an open exchange of ***current*** medical information from the employee's doctor and other information from the employee and employer about job duties." *Allen v. City of Raleigh*, 140 F. Supp. 3d 470, 488-89 (E.D.N.C. 2015) (emphasis in original).

This is precisely what APL did – seek "an open exchange of ***current*** medical information from Tarquinio's doctor – and the District Court correctly held APL's requests were permissible under the ADA.

> 2. The District Court Correctly Held That Tarquinio Broke Down the Interactive Process By Refusing to Sign the <u>Medical Release Form</u>.

The district court correctly noted Tarquinio "declined to sign the medical release form that would allow Dr. Lam to make an informed decision about whether her exception should be granted" and APL "gave Plaintiff ample opportunities to sign the form or provide additional documentation detailing why she needed an exception, and she continuously refused." JA289. The district court further correctly held "APL attempted in good faith to participate in any interactive process that would allow for both the employer and employee to identify a reasonable accommodation, but Plaintiff refused to participate." *Id.* Therefore, the district court

correctly held that Tarquinio broke down the interactive process. JA290. Tarquinio even alleges in her Amended Complaint that she "declined to sign the requested medical release." JA09. ECF NO. 21. at ¶ 21.

In *Berkner*, the court held:

> Where the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the interactive process.

2013 U.S. Dist. LEXIS 34320, at *22. Further, the plaintiff requested a transfer based on what she identified as a psychiatric disability. *Id.* The employer then "requested documentation regarding her medical diagnosis and needs." *Id*. Plaintiff "submitted a form that addressed some, but not all of its questions." *Id.* The employer "asked Plaintiff for additional information regarding her diagnosis and possible accommodations" but plaintiff never provided them. *Id.* The court granted summary judgment to defendant because, precisely as here, "plaintiff failed to hold up her end of the interactive process by clarifying the extent of her medical restrictions." *Id.* at *22-23.

Courts have specifically held failure to sign a medical release like the one here breaks down the interactive process:

> It is undisputed that [employee] not only failed to complete the forms the Agency requested, but that he also failed to submit the additional medical documentation the Agency asked for during the interactive process. Thus, despite his protestations to the contrary, the record indicates that it was [employee] —not the Agency—who was responsible for the breakdown

in the interactive process."

*Ali v. McCarthy*, 179 F. Supp. 3d 54, 77-78 (D.D.C. 2016).[5] The *Ali* Court further

acknowledged:

> Without such a medical release, the Agency had no authority to obtain information from [employee]'s doctors, even though one provider had invited the Agency to contact her. Given these roadblocks that [employee] erected, he cannot blame the Agency for the breakdown in the interactive process.

*Id.* at 79.

Courts have similarly applied this principle to cases like this one involving

exemption requests from COVID-19 vaccination policies. In *Adams v. Mass. Gen*

*Bringham, Inc.*, the court granted summary judgment to an employer that instituted

a mandatory vaccination program when several former employees refused provide

physician notes to support their request:

> "[I]t is undisputed that plaintiffs [] did not provide a letter from a physician supporting their medical-exemption requests. . . the omission is fatal. An employer may require that the documentation about the disability and the functional limitations come from an appropriate health care or rehabilitation professional."

No. 21-11686-FDS, 2023 U.S. Dist. LEXIS 174606, at *25-26 (D. Mass. Sept. 28,

2023).

---

[5] This case concerned the Rehabilitation Act, not the ADA. However, "[t]he analysis used to determine whether an employer has discriminated under the Rehabilitation Act is the same as the analysis under the Americans with Disabilities Act ('ADA')." *Works v. Colvin*, 519 Fed. Appx. 176, 184 (4th Cir. 2013).

Just like this line of cases, the medical information APL needed was in Tarquinio's sole control, and she prevented APL from accessing it. The chart below shows APL's efforts to obtain current medical information from Tarquinio between her October 1, 2021 request and her December 7, 2021 termination:

| October 1, 2021 | Tarquinio submits request for accommodation but does not sign Medical Release Form. | JA98 |
|---|---|---|
| October 11, 2021 | APL informs Tarquinio that she failed to sign the Medical Release Form, reiterating its request for the form | JA116 |
| October 14, 2021 | APL informs Tarquinio it did not have enough information to grant her request and needed either additional medical documentation or the ability to speak with her doctor. Tarquinio reiterates she would not sign the Medical Release Form. | JA120, 224 |
| October 18, 2021 | APL informs Tarquinio it needs medical documentation more recent than the 9-year-old bloodwork she submitted. | JA118 |
| November 15, 2021 | Tarquinio reiterates she will not sign the Medical Release Form, and points to two journal articles not related to COVID from 2003 and 2005. | JA127-163 |
| November 22, 2021 | Tarquinio meets with APL's Accommodation Team to discuss her accommodation request, but she still will not provide more medical information or sign the Medical Release Form. | JA89-90 |
| November 29, 2021 | Dr. Lam states he still lacks medical information sufficient to evaluate Tarquinio's Request and reiterates "I am happy to speak with the outside provider." | JA228 |
| November 30, 2021 | APL issues the Denial of Accommodation Letter and gives Tarquinio 7 days to either vaccinate or provide additional information. | JA165-167 |
| December 3, 2021 | Tarquinio provides a single page of incomplete bloodwork showing her CD57 level, but still will not sign the Medical Release Form. | JA169 |

24

Tarquinio's testimony confirms she refused to provide current medical information or allow APL to speak to her providers:

> **Q:** [the Amended Complaint] says, Plaintiff declined to sign the medical – the requested medical release, is that – that's an accurate statement?
> **A:** I didn't sign one.
> **Q:** Okay. And so you declined to sign it, correct?
> **A**: Yes.
> -------------
> **Q:** Okay. But you knew that, and you write it right here, that the same employees notified you that it would enable APL's medical officer to consult with you – with your Doctor; correct?
> **A:** Yes.
> **Q:** Okay. And so and you declined to allow them to speak with your medical provider, among whatever else the form would have also requested?
> **A:** Yes.

JA75-77. Furthermore, undisputed testimony from Dr. Lam, Dr. Schwartz, and Dr. Sivieri show they were each ready and willing to discuss Tarquinio's current medical condition and limitations and her accommodation request, but Tarquinio's refusal to sign the Medical Release Form was the sole reason they could not. JA190, 221-222, 246.

Accordingly, the district court correctly held Tarquinio alone broke down the interactive process, a total bar to recovery for failure to accommodate.

### 3.     APL Did Not Break Down the Interactive Process.

In her Brief, Tarquinio argues that it was APL that broke down the interactive process. Br. 18. She cites a Sixth Circuit decision, claiming that court ruled for a

plaintiff "because the employer never considered making an exception to the in-person work rule." *Id.* (citing *Mosby-Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595, 600-601 (6th Cir. 2018)). But the undisputed record demonstrates Tarquinio broke down the interactive process before APL even had a chance to adequately consider her request. As the district court correctly noted, "[h]ad Plaintiff filled out the release form or provided timely medical documentation, Dr. Lam would have been able to make an informed decision, which may have been the accommodation that Plaintiff was seeking to begin with." JA290.

The record also shows that both of Tarquinio's doctors were willing to speak with APL's doctor. JA190, 221-222, 246. It further shows that Dr. Lam approved multiple exemption requests from the Vaccination Policy once he spoke to an employee's healthcare provider to better understand their need for an accommodation. JA219-220. And the record establishes that APL granted more medical exemptions than it denied. JA273. It is clear Tarquinio's refusal to sign the Medical Release Form prevented APL from analyzing her request, stopping the interactive process in its tracks.

Tarquinio further argues APL "unilaterally determined that Tarquinio's condition did not warrant an exemption from the vaccine mandate and, as a result was unwilling to consider her requested accommodation." Br. 19. This once again ignores the record. APL made every effort to avoid "unilaterally" determining that

26

she was not eligible for an exemption. Dr. Lam first determined that Tarquinio's condition was not contraindicated by the CDC for COVID-19 vaccination. JA212-213, 224, 228. But rather than "unilaterally" denying the application, Dr. Lam testified it would have been helpful to his evaluation of Tarquinio's request if he could have spoken to her physicians, who are specialists in her condition, to understand the relation between her condition and a need for exemption. JA214-216.

Tarquinio's assertion that APL did not "consider her requested accommodation" is absurd. The record establishes that APL did not have a sufficient medical basis to go on. Dr. Lam provided multiple written responses reflecting his thoughtful consideration of her request. For instance, on October 14, he stated:

> Lyme disease is not a medical contraindication to receiving the Covid vaccine. I believe there is insufficient justification in this documentation to accept this request. Further explanation as to specifically why her Lyme diagnosis would preclude her from being vaccinated would need to be submitted.

JA224. On October 18 he reiterated "I'd be open to reconsidering this again if the employee provides current documentation signed by the provider." JA212, 214, 225.

Tarquinio further argues that APL "told Tarquinio it did not matter whether Tarquinio could substantiate her condition with medical records because APL had determined that Lyme Disease was not a CDC approved contraindication." Br. 19. A plain reading of the document Tarquinio cites for this proposition reveals that she is misrepresenting it: "Because the basis of your determination does not turn on

27

whether you have established the underlying diagnosis below, but, rather, whether you have established a condition that is contraindicated for receiving the COVID-19 vaccination according to CDC guidelines." JA169. This demonstrates APL was not doubting the existence of her condition, but only reiterating *again* that it needed to understand why her condition should excuse her from vaccination.[6]

The ADA permits employers to request current information to establish a "logical bridge" between the employee's accommodation request and the employee's disability. *See Kelly v. Town of Abingdon*, 90 F.4th 158, 167-168 (4th Cir. 2024). And that "logical bridge [was] absent" here because Tarquinio refused to provide any information connecting the current particulars of her disability to her requested blanket exemption from the Vaccination Policy. *Id*. at 168; *see also Lashley*, 66 F. 4th at 179 ("We cannot fault [employer] for failing to accommodate plaintiff. Due to [employee's] communication breakdown, [employer] was left guessing what an accommodation for employee might entail.").

Next, Tarquinio argues that she proposed an alternate accommodation of working remotely or taking COVID tests (despite also asking for an exemption from

---

[6] This is precisely the type of "individualized assessment" that the ADA contemplates, albeit in the slightly different context of determining whether an employee with a disability is a direct threat to themselves or other employees. *Class v. Towson Univ.*, 806 F.3d 236, 255 (4th Cir. 2015) ("In the employment context, a similar standard applies when an employer decides whether a disabled employee poses a direct threat to his or her own health and safety. In such cases, the employer must perform an **individualized assessment** of the employee's ability to safely perform the job, *based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence.*") (emphasis added) (citing 29 C.F.R. § 1630.2(r)).

any COVID testing requirement). This argument puts the proverbial cart before the horse as Tarquinio was first required to establish she needed an accommodation. *See Murphy v. Cty. of New Hanover*, 2021 U.S. App. LEXIS 30275 at *2-3 (4th Cir. Oct. 8, 2021) ("After an employee establishes [s]he has a disability requiring accommodation, [then] an employer has a duty to engage in an interactive process to determine an appropriate accommodation."). Arguments relating to what other accommodations might have worked are hypothetical entirely because of her own actions. Tarquinio's assertion that she was "flexible and creative" is belied by her deposition testimony that APL should have just – without speaking [to] medical provider or learning any more specific information other than what [she] provided [her]self, that they should have just granted the accommodation to [her] based on [her] word." JA90-91.

Finally, Tarquinio's arguments that APL broke down the interactive process by referring to her condition as Lyme Disease rather than Chronic Lyme Disease Induced Immune Dysregulation is definitional form over substance. Putting aside that Tarquinio herself referred to her condition as Lyme's throughout her deposition, the Accommodations Coordinator and her staff are laypeople. Tarquinio herself also testified that she believed it would help Dr. Lam if he were able to consult with a Lyme's Disease expert like Dr. Sivieri or Dr. Schwartz – the very same doctors she would not allow Dr. Lam to consult. JA94-96.

29

It is disingenuous to suggest APL's use of colloquial shorthand amounts to a legal violation when there is zero record evidence of discriminatory animus. This argument even further underscores the undisputed fact that APL personnel simply did not have enough information to adequately consider Tarquinio's request in the first place, that Tarquinio alone was in possession of that information, and that she unilaterally broke down the interactive process by refusing to provide it to APL.

### B.    The District Court Did Not Err in Making "Key Factual Findings."

Tarquinio mistakes the applicable standard and misrepresents the district court's holding. As discussed fully above, the district court did not determine the veracity of any particular fact. Rather, the district court accepted APL's undisputed material facts as true because Tarquinio did not oppose them. Rather than accept that she failed to properly dispute any of APL's facts below, Tarquinio now argues the district court erred in making "two key factual findings." But these attempts to "correct" the record are procedurally improper at this stage. *RFE Industries, Inc.*, 105 F.3d at 925 (4th Cir. 1997) ("[The] district court's findings [of fact] may be disturbed on appeal only if they are clearly erroneous.")

Even so, the two facts that Tarquinio contends the district court got wrong are fully supported in the record. Tarquinio claims the district court incorrectly found "that Tarquinio provided no timely medical records" and cites a Medical Verification Form dated September 29, 2021. Br. 22. However, her doctor testified that he did

not fill out that form, and thereafter Tarquinio only submitted a 2012 blood test result showing Lyme disease. JA185, 118. Tarquinio's purported "timely medical records" included a nine-year-old blood test, two twenty-year-old medical journals having nothing to do with COVID-19, and a single page from larger blood test results from her doctor who testified that no diagnosis could be made from that blood test and that he did not believe Tarquinio should be exempt from the COVID-19 vaccine. JA101-110, 127-163, 240-241.

Tarquinio further argues "Dr. Lam apparently did not agree with Dr. Schwartz" and therefore APL should have "demand[ed] that a third doctor resolve the difference of opinion." Br. 23-24. This is yet another hypothetical with no factual basis or legal support. It is also the height of irony given this case turns on Tarquinio's refusal to allow APL to talk to her first two doctors – and her proposed solution is that APL should have consulted yet a third doctor.[7] It is also false that Dr. Lam did "not agree" with Dr. Schwartz. The two never spoke because Tarquinio would not allow it. JA189-190, 213, 221-222.

The second "key fact" that Tarquinio contends the district court got wrong was that "Tarquinio refused to participate in the interactive process." As addressed

---

[7] Tarquinio assigns fault for not consulting a third doctor to resolve this imaginary difference of opinion, but she cites "procedures under the Family and Medical Leave Act, 29 U.S.C. § 2613(c)." Br. 23-24. Tarquinio's reliance on the FMLA is misplaced because she does not bring an FMLA claim. Tarquinio also cites no authority suggesting APL was bound by FMLA regulations in this case, or that this Court should look to it in deciding whether APL violated the ADA.

in Section II(A)(3) *supra*, the record evidence shows that the district court correctly

determined Tarquinio refused to participate in the interactive process by, *inter alia*,

refusing to sign the Medical Release Form and refusing to allow Dr. Lam to contact

her doctors. Tarquinio herself testified that she believed she had no obligation to

participate in the interactive process. JA90-91. Tarquinio cannot and does not dispute

this damning testimony.

> ### C. Tarquinio Cannot Argue on Appeal that the Medical Release Form Was Overbroad Because she did not Raise this Argument at the District Court, but the Argument Fails Even if the Court Chooses to Consider It.

>> #### 1. Tarquinio Cannot Argue that the Medical Release Form is Overbroad Because she did not Raise that Argument at the District Court.

In her Brief, Tarquinio argues that APL's Medical Release Form was overly

broad and intrusive, thereby justifying her refusal to sign. Br. 25-27. However,

Tarquinio did not preserve the issue of the allegedly overbroad medical release for

appeal. Therefore, she cannot raise that argument for the first time on appeal.

"If a party fails to assert a legal reason why summary judgment should be

denied, that ground is waived and cannot be considered or raised on appeal." *Joseph

v. Target Stores, Inc.*, No. 20-1730, 2023 U.S. App. LEXIS 8745, *12 (4th Cir.

2023); ref. *Cox v. SNAP Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017) (cleaned up).

"In order to preserve an issue for appeal, however, it is not enough to simply assert

the claim; a party must provide supporting argument." *Johnson v. United States*, 734

F.3d 352, 360 (4th Cir. 2013) (internal citations omitted). At the appellate level, "[p]arties are free to pursue variations of argument made below . . . so long as the appealing party asked both courts to evaluate the same fundamental question." *Metro. Wash. Airports Auth. v. Pan*, 106 F.4th 355, 361 (4th Cir. 2024) (cleaned up).

In her summary judgment opposition, Tarquinio did not challenge the legal validity of the release. Below, Tarquinio argued the Medical Release Form operated as an alleged strawman for APL's motives in the interactive process, with a vague citation to EEOC Guidelines about what type of medical information an employer may seek. ECF 26 at 15-18. Tarquinio argued that APL's "[r]epeatedly asking [her] to sign an omnibus medical release so it could speak directly to Dr. Schwartz" was somehow "contrary [] to the spirit of the interactive process" without further support. *Id.* at 3. The arguments presented in Tarquinio's Brief regarding the legal validity of the Medical Release Form itself and its compliance with HIPAA are absent from the arguments presented to the district court. Br. 25-27

At most, Tarquinio generally objected to the release as overly broad. Tarquinio did not, however, make any specific factual or legal argument concerning the release. But as this Court has held, Tarquinio was required to "do more than raise a non-specific objection or claim" to raise the validity of the Medical Release Form on appeal. *Shipton v. Balt. Gas Electric Co.*, 109 F.4th 701, 707 (4th Cir. 2024). The district court did not rule on the validity of the medical release because it was not

asked or required to do so.

> 2.   Even if the Court Considers Her Argument, the Record Establishes that Overbreadth is Not Why Tarquinio <u>Refused to Sign the Release</u>.

Even if Tarquinio had not waived this argument, it would make no difference. In arguing the release was overly broad, Tarquinio relies primarily on this Court's decision in *Coffey*, 23 F.4th 332 (4th Cir. 2022) and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). Her reliance on either authority makes no sense.

First, this Court ruled in *Coffey* – just like here – that the employer's request for additional medical information was appropriate, determined that the documentation provided by the employee was insufficient, and the employer's request for additional medical information and ultimate termination of the employee for failing to provide sufficient medical information were lawful. F. 4th at 339-41. The facts in *Coffey* directly support APL's position, which is why APL cited it and the district court relied upon it in ruling in APL's favor. JA291-292.

Further, Tarquinio's reliance on HIPAA is off-base. Tarquinio argues "[t]he unlimited scope of the medical release form shows it was overly broad and in violations of … the Privacy Rule of HIPAA. 45 C.F.R. § 164.508(c)." Br. 26. But it is "well established that the privacy rule promulgated under [HIPAA]", 45 C.F.R. § 164 does not apply directly to employers." *Hodge v. United Airlines*, 821 F. Supp.

2d 180, 195 n.9 (D.D.C. 2011). As APL was Tarquinio's employer, her invocation of HIPAA does not warrant further analysis.

Even if Tarquinio could point to relevant legal authority, it still would not matter because the record establishes that Tarquinio did not refuse to sign the Medical Release Form because of any perceived overbreadth, nor did she complain at any point to anyone at APL about the release itself. Instead, Tarquinio refused to sign it because, as she admitted in her deposition, APL "should have just granted the accommodation to [her] based on [her] word." JA90-91.

The record also establishes that even if the Medical Release Form could have theoretically allowed APL to seek overly broad information, that is not the purpose for which APL tried to use it. The record is replete with unrefuted evidence of exactly what APL openly stated it wanted to collect with the Medical Release Form: (1) timely, relevant medical information that showed why Tarquinio's particular condition contraindicated COVID-19 vaccination; and (2) the ability for Dr. Lam to speak with Dr. Schwartz or Dr. Sivieri – the two doctors Tarquinio identifies as the ones who treat her Lyme's disease derivative condition. JA116, 177, 213.

Accordingly, Tarquinio cannot ask this Court to overturn the district court using an argument that she waived below and is unavailing in any event.

### D.     The District Court Did Not "Fault[] Tarquinio for Not Accepting an Ineffective Accommodation."

Tarquinio argues that the district court erred by determining Tarquinio would only accept her "preferred choices of accommodation." Br. 27 citing JA289. She also argues "APL offered no accommodation of any kind."

But, as the district court correctly held, an accommodation was not offered entirely because of Tarquinio's refusal to sign the Medical Release Form or provide current medical documentation. JA289-290. There is nothing in the record relating to what accommodations APL might have offered Tarquinio because she broke down the interactive process before they ever got that far. The district court even mused that had Tarquinio allowed Dr. Lam to speak to her doctors, he "would have been able to make an informed decision, which may have been the accommodation that Plaintiff was seeking to begin with." JA290.

The actual undisputed record evidence shows that APL: (1) had procedures in place for evaluating accommodation requests; (2) granted more medical exemptions than it denied for the Vaccination Policy; and (3) in other cases, Dr. Lam spoke to requesters' health providers, and then approved medical exemptions he had previously denied. JA173-174, 273, 219-220. Tarquinio's claim that APL just would not do the same for her is not only controverted by the record but makes no sense.

The assertion that APL offered no accommodation is also wrong. Employers are only required to provide a *reasonable* accommodation, not the employee's

36

*preferred* accommodation. *See Firestone Fibers & Textiles Co.*, 515 F. 3d at 321-23. APL temporarily accommodated Tarquinio while it processed her request and extended that temporary accommodation multiple times. JA118, 176-177. The Vaccination Policy required compliance or termination by October 15, 2021 – APL did not terminate Tarquinio's employment until December 7, 2021, all the while attempting to work with her and seeking permission or medical information.

Tarquinio again misrepresents the record, stating: "According to Tarquinio's treating doctor, APL's rejection of Tarquinio's proposed accommodations would have posed a serious risk to her health." Br. 28. She does not cite to the record for the proposition because her doctors never said any such thing. Tarquinio had two doctors, Sivieri and Schwartz. Dr. Siveiri's office *declined to sign a document recommending Tarquinio be exempt from the COVID-19 vaccine*: "Patient will have to have conclusive lab results which show that she has [an] active infection in order to qualify for exemption to COVID vaccine, and that would only be temporary." JA238-239. Dr. Sivieri testified that he agreed "a hundred percent, yes" that Tarquinio **did not** qualify for an exemption from the Vaccination Policy because to qualify for an exemption she did not have an active infection. *Id*.

Dr. Schwartz's testimony fares no better for Tarquinio. He testified that he does not blanketly recommend all Lyme patients not get vaccinated, he does a "case-by-case, or a patient-by-patient analysis" because "there is no one-size-fits-all

treatment here. You have to do an individualized assessment and then you determine what [] is the best path to treat them is." JA182, 196. He further testified that he had only a vague recollection of speaking to Tarquinio "about immune dysregulation and autonomic dysregulation." JA189. Finally, he testified that he never spoke to anyone at APL "regarding her request to be exempted from the vaccine" because no one ever contacted him, but he stated that he would have happily spoken to Dr. Lam had Tarquinio authorized him to do so. JA189-190.

Accordingly, the district court did not fault Tarquinio for not accepting an ineffective accommodation.

## III. The District Court Correctly Dismissed Count II Alleging Disability Discrimination.

The district court correctly held that the undisputed facts establish APL did not terminate Tarquinio's employment because of her disability and, therefore, correctly granted summary judgment to APL on Count II. "To establish a prima facie case for disability discrimination under the ADA, a plaintiff must prove: (1) that she has a disability, (2) that she is a 'qualified individual' for employment in question, and (3) that her employer discharged her or took other adverse employment action because of her disability." *Lacasse v. Didlake, Inc.*, 712 Fed. Appx. 231, 238-239 (4th Cir. 2018); *Wilson*, 717 F.3d at 345.

As this Court recently affirmed, when an employee refuses to comply with a company policy, the employee cannot establish the required but-for nexus between the employment decision and the alleged disability:

> The record here, as attached by Plaintiff to his Amended Complaint, reflects [employer]'s persistent efforts to procure his compliance with the attestation policy, and its eventual ultimatum that he would be terminated if he refused to comply. Put simply, then, Plaintiff has not plausibly alleged that [employer] possessed some discriminatory animus linked to Plaintiff's unknown medical condition. He was simply terminated for failing to adhere to company policy. Given the distinct lack of allegations linking Plaintiff's termination to any actual or perceived disability, 'but for' causation has not been plausibly alleged. Plaintiff's ADA discrimination claim will be dismissed."

*Jorgenson v. Conduent Transp. Solutions, Inc.*, No. SAG-22-01648, 2023 U.S. Dist. LEXIS 18463, at *12-13 (D. Md. Feb. 2, 2023) (*affirmed by Jorgenson v. Conduent Transp. Sols., Inc.*, No. 23-1198, U.S. App. LEXIS 15542 (4th Cir., June 21, 2023)).

Here, the record establishes APL terminated Tarquinio's employment because she refused to comply with the Vaccination Policy. Tarquinio's purported disability had nothing to do with the decision. As in *Jorgenson,* APL engaged in "persistent efforts to procure [her] compliance" and told Tarquinio repeatedly "[s]he would be terminated if [s]he refused to comply." *Id*.

Tarquinio expressly admitted she was not terminated because of her disability, but instead for failing to follow the Vaccination Policy:

> **Q:** Correct, and what the lab ultimately did was terminate you because you weren't in compliance with this policy; is that right?

> **A:** Correct.

JA54-55. Her termination letter reiterates that she was fired for violating the Vaccination Policy: "as a result of this violation of policy, your employment with the Laboratory is terminated as of the date of this letter." JA171.

Tarquinio argues that the district court erred in dismissing Count II because her "disability was indivisible with her refusal to comply with the vaccine policy. She refused to comply solely and directly because of her disability." Br. 29. This tautology is built on unsupported assumptions directly refuted by the record.

First, compliance with the Vaccination Policy did not require vaccination. An employee could comply with the Vaccination Policy by becoming vaccinated *or* receiving an approved medical or religious accommodation. JA173-174. If Tarquinio is arguing that her "disability" prevented vaccination, the disjunctive option of receiving an accommodation disproves that argument.

Second, Tarquinio points to no record evidence to establish that her refusal to comply with the policy was "indivisible" from her disability. Indeed, the record establishes the contrary. Had Tarquinio signed the Medical Release Form, Dr. Lam would have spoken to her providers. And, as he did "pretty routinely" and for multiple other APL employees, he may have recommended an exemption once he

spoke to her providers.[8] JA219-220. After all, APL granted 52% of the medical exemption requests it received from the Vaccination Policy. JA273.

Third, Tarquinio alleged in her own complaint, testified in her deposition, and her doctor confirmed that she felt she was "precluded from taking the experimental mRNA vaccines, the mRNA vaccines were Pfizer and Moderna." JA79-80. But the record further establishes: (1) the Johnson & Johnson vaccine is not an mRNA vaccine; (2) the Johnson & Johnson vaccine was available when Tarquinio requested an accommodation; (3) that APL would have deemed Tarquinio receiving the Johnson & Johnson vaccine as compliant with the Vaccination Policy; and (4) APL did accept that vaccine as compliant for multiple APL employees. JA178.

Tarquinio's arguments that the Vaccination Policy "screen[ed her] out" or that she "cannot comply with an employment standard" make no sense. Br. 29. Nor does her reliance on *Bates v. UPS, Inc.*, where the Ninth Circuit affirmed that the defendant discriminated by applying a hearing test as a job requirement for its truck drivers modeled after a Department of Transportation regulation that applied to trucks different from those the hearing-impaired plaintiff applied to drive. 511 F.3d 974 (9th Cir. 2007). There, the employer did not contest that its hearing qualification standard had the effect of screening out classes of employees. Here, Tarquinio points

---

[8] Though Dr. Sivieri testified "a hundred percent" that he would not have recommended her for an exemption based on her condition, which further undercuts Tarquinio's argument that she could not have received vaccination. JA239.

to no record evidence, nor is there any, that the Vaccination Policy screened out Tarquinio or any class of employee. Instead, the record establishes Tarquinio could have complied with the Vaccination Policy by engaging in the interactive process with APL. She chose not to do so.

Therefore, the district court was correct in concluding "Plaintiff was fired because of her failure and refusal to comply with the company vaccination policy" and "there is no genuine dispute of material fact with respect to Plaintiff's claim for employment discrimination under the ADAAA." JA291.

## IV. The District Court Correctly Dismissed Count III Alleging Prohibited Medical Inquiry Under the ADA.

The district court correctly determined that APL did not subject Tarquinio to an impermissible medical inquiry, and therefore it rightly granted summary judgment to APL on Count III. Section 42 U.S.C. § 12112(d)(4)(A) states:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

"The interpretative guidelines to the ADA explain that [this provision] was intended to prevent against medical tests and inquiries that do not serve a legitimate business purpose." *Leonard v. Electro-Mechanical Corp.*, 36 F. Supp. 3d 679, 685 (W.D. Va. 2014) (quoting 29 C.F.R. pt. 1630, App'x 1630.13(b)) (internal quotations

omitted); *see also Porter v. U.S. Alumoweld Co.*, 125 F.3d 243, 246 (4th Cir. 1997) (applying standard to fitness for duty medical exams).

The Court should affirm the district court's grant of summary judgment on Count III for at least three reasons.[9] First, the district court correctly determined that APL's requests were job related. Second, the record clearly establishes that APL's requests were in direct response to Tarquinio's request for a medical accommodation. Third, the requests were in furtherance of public safety.

### A. The District Court Correctly Determined that APL's Requests were Job Related.

A medical inquiry is appropriate if it "is job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). Tarquinio testified that she thought compliance with the Vaccination Policy was "job-related."

> **Q:** Okay. And when issues arise about those policies and whether or not they've been violated or whether or not they apply to any individual employee, questions about those policies, they would be job-related question; right? Because it's a requirement for everyone in their job; is that right?
> **A:** Yes.

---

[9] Tarquinio argues that APL made four distinct medical inquiries. Tarquinio offers no explanation in law or fact as to why each should be treated as a separate inquiry, or whether each even is a medical inquiry under the statute. Even if the Court were to analyze each of the four separately, it does not change the analysis. It is also clear these four distinct events are not all medical inquiries. *Compare* Br. 33 ("[APL] required her to disclose whether she had been vaccinated"); *with Bobnar v. AstraZeneca*, 672 F. Supp. 3d 475, 481 (N.D. Ohio 2023) ("The EEOC expressly advised that employer's COVID-19 vaccination status is not a prohibited medical inquiry under the ADA."); *Lee v. Seasons Hospice*, 696 F. Supp. 3d 572, 587 (D. Minn. 2023) ("Guidance from the EEOC confirms that asking about vaccination does not violate the ADA's medical inquiry provision.").

JA52-53. In spite of Tarquinio's own testimony, she now argues "[d]ue to the nature of Tarquinio's job, she had no greater chance of spreading COVID-19 than the general public." Br. 34-35. Tarquinio offers no citation to the record for this sweeping and unsupported proposition. Tarquinio argues the district court erred in concluding that APL had a business necessity for its purported medical inquiry, but she does not cite to any record evidence suggesting that APL did not have a business necessity. Also with no cite to the record or legal precedent, Tarquinio declares "her vaccination status had nothing to do with her job duties."[10]

Tarquinio also cites *National Federation of Independent Business v. Department of Labor, OSHA* for the proposition that "Supreme Court has already ruled that vaccination against COVID is not inherently job-related." 595 U.S. 109 (2022). This is a complete misstatement of the *National Federation of Independent Business* holding. In that case, the Supreme Court addressed whether Congress gave OSHA the authority to issue a nationwide vaccination requirement for federal government employees. *Id.* at 117. In no way did it hold, or even analyze, whether COVID vaccination was "job-related" for the purposes of the ADA. *See Covel v. Cmty. Physicians of N. Port, P.A.*, No. 23-10853, 2024 U.S. App. LEXIS 10598, at *9 (11th Cir. May 1, 2024) (per curiam) (holding that *National Federation of*

---

[10] In addition to the lack of citation, Tarquinio replaces the statutory language of "job-related", requirements to "job duties", a colloquial term, to argue a different results. It is unavailing.

*Independent Business* "concerned the authority of government agencies to enact… vaccine mandates; [it] did not call into question the ability of private employers to decide voluntarily whether to require masks or vaccination for their employees.").

The record is clear that APL's requests were job-related.[11] Accordingly, the district court did not err in determining APL's requests were job related.

### B. The District Court Correctly Held that APL's Request for Medical Information Arose from the Accommodation Request.

It is undisputed both that Tarquinio requested an accommodation, and that APL did not seek any medical information from her prior to her requesting an accommodation. The record conclusively establishes, as the district court correctly concluded, "[h]ad Plaintiff not filed an accommodation, Defendant would not have made a medical inquiry." JA292. The district court further noted the "medical inquiry was clearly job-related as it dealt entirely with Plaintiff requesting a medical accommodation for APL's vaccination policy." *Id*.

This Court has recently affirmed that "an employer's request for medical records or medical examination may be construed as job-related and consistent with business necessity if … the employee requests an accommodation." *Coffey v. Norfolk S. Ry. Co.*, No. 2:19-cv-509, 2021 U.S. Dist. LEXIS 46473, at *8-9 (E.D. Va. Feb.

---

[11] Tarquinio notes that her argument that APL's policy is akin to an employer asking to "disclose their birth control methods may seem apocryphal." Br. 38. She is right. This is also yet another far-fetched hypothetical with no basis in the actual record evidence.

5, 2021)) (*aff'd by Coffey,* 23 F.4th 332 (4th Cir. 2022)); *see also Frye v. Am. Coll. of Radiology*, No. 1:19-cv-80, 2020 U.S. Dist. LEXIS 269603, at *25-27 ("E.D. Va. March 11, 2022) (employer had a business necessity to contact plaintiff's psychiatrist to evaluate plaintiff's ability to drive when plaintiff argued her attendance issues were related to anxiety arising from her commute) (*aff'd by Frye v. Am. Coll. of Radiology*, No. 20-1604, 2022 U.S. App. LEXIS 2937) (4th Cir. Feb. 1, 2022)).

On October 1, 2021, Tarquinio submitted her accommodation request. JA98. APL sent follow up communications to Tarquinio asking her to provide more information or sign the Medical Release Form on October 11, October 14, and October 18. JA116, JA224, JA118. APL repeatedly told her it desired to speak to her medical providers to gather information in direct response to her medical accommodation request. JA127, 89-90, 165-167. This Court has squarely held that this is permissible. *See Hannah P. v. Coats*, 916 F.3d 327, 339 (4th Cir. 2019) ("An employer's request for a medical examination is job-related and consistent with business necessity when…the employee requests an accommodation[.]") (cleaned up).

All of APL's "medical inquiries" occurred after October 1, 2021, the date Tarquinio first requested a medical accommodation. The district court therefore did

not err in concluding that APL's request for medical information permissibly arose from Tarquinio's accommodation request.

>   **C.   The District Court Properly Found that the Vaccination Policy Was Implemented to Protect Public Safety Thereby Further Justifying APL's Request for Medical <u>Documentation</u>.**

The district court correctly held that the Vaccination Policy was put in place to protect public safety, and therefore was correct in factoring that into its conclusion that APL did not engage in an unlawful medical inquiry. "One concern under 42 U.S.C. § 12112(d)(4)(A) arises from ensuring public and workplace safety." *Coffey*, 2021 U.S. Dist. LEXIS 46473, at *8-9 (*aff'd by Coffey*, 23 F.4th 332 (4th Cir. 2022)).

The record establishes that the requests APL made "arises from ensuring public and workplace safety." APL's Accommodations Coordinator testimony is undisputed in the record that the reason for the Vaccination Policy and the inquiries into accommodations "was for the safety of staff," to determine "whether or not [Tarquinio] could safely perform her job functions" and whether Tarquinio remaining unvaccinated could pose a "danger" to her coworkers. JA231-233. The district court correctly held "the medical inquiry was made to determine whether Plaintiff should be exempt from the employer's COVID-19 vaccination policy – *a policy put in place to protect the public safety of all employees, including Plaintiff*." JA292.

Tarquinio does not point to any evidence showing APL's decisions were not in the interest of public safety. Tarquinio argues the district court "made an unsupported finding of fact that unvaccinated APL employees, including Tarquinio, constituted a 'direct threat' to others in the workplace." Br. 23. She cited JA291-292 for this proposition. But the district court made no such finding at JA291-292 or anywhere else.

The district court was therefore correct to grant APL summary judgment on Count III.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's order.

Dated:  September 27, 2024                    Respectfully submitted,

_/s/ Jeremy S. Schneider_

JEREMY S. SCHNEIDER
JASON A. ROSS
JACKSON LEWIS P.C.
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
(703) 483-8300
Jeremy.Schneider@jacksonlewis.com
Jason.Ross@jacksonlewis.com
*Counsel for Johns Hopkins University
Applied Physics Lab*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees respectfully submits that oral argument is not necessary because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument. *See* Fed. R. App. Pro. 34(a)(2)(C).

*/s/ Jeremy S. Schneider*

JEREMY S. SCHNEIDER
JASON A. ROSS
JACKSON LEWIS P.C.
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
(703) 483-8300
Jeremy.Schneider@jacksonlewis.com
Jason.Ross@jacksonlewis.com
*Counsel for Johns Hopkins University Applied Physics Lab*

49

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Response Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because it contains 11,388 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This Response Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2019 14-point Times New Roman font.

*/s/ Jeremy S. Schneider*

JEREMY S. SCHNEIDER
JASON A. ROSS
JACKSON LEWIS P.C.
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
(703) 483-8300
Jeremy.Schneider@jacksonlewis.com
Jason.Ross@jacksonlewis.com

*Counsel for Johns Hopkins University Applied Physics Lab*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2024, I electronically filed the foregoing Response Brief of Defendant-Appellee using the Court's NextGen CM/ECF system, which caused service on all counsel of record.

/s/ Jeremy S. Schneider

JEREMY S. SCHNEIDER
JASON A. ROSS
JACKSON LEWIS P.C.
10701 Parkridge Blvd., Suite 300
Reston, Virginia 20191
(703) 483-8300
Jeremy.Schneider@jacksonlewis.com
Jason.Ross@jacksonlewis.com

*Counsel for Johns Hopkins University Applied Physics Lab*

51